**MARY BETSON, Executrix of Sarah Stidham, v. REBECCA SHIELDS and JOHN STOCKTON, Administrator of William Stidham.**

Court of Chancery. New Castle. April 21, 1820.

*Ridgely's Notebook III, 95.*

*Rogers* and *Booth* for complainant.

*Black* for defendant.  .  .  .[1]

THE CHANCELLOR.  The will of Peter Stidham under which the annuity and legacy are claimed is dated March 3, 1776, and was proved April 25, 1777.  Sarah Stidham, the widow of Peter, and the annuitant, died in the year 1811, 34 years after the death of the testator.  William Stidham whose land was charged with this annuity, who was also the executor of Peter Stidham, died in March, 1808, 31 years after the testator.  The bill for this annuity, filed by Mary Betson, the executrix of Sarah Stidham, who was also a daughter of Peter, the testator, and of the said Sarah, is dated and was filed March 30, 1818, more than forty years after the death of the testator, ten years after the death of William the executor, and seven years after the death of the annuitant.  Mary Betson claims her legacy under the same will of Peter Stidham.  She filed her bill in March, 1818, forty years after the death of her father, Peter Stidham, the executor.

In the case of Mary Betson, executrix of Sarah Stidham, in which an account for the annuity is prayed, there is no one circumstance on which the payment of the annuity can be presumed but from length of time;  and the circumstances in the case are sufficient to create great doubt against such presumption.  The testator died in 1777.  Immediately after his death his widow was not in such a necessitous condition as to be compelled to force William Stidham into the payment of this annuity; on the contrary she was, if not in affluent, yet in comfortable circumstances.  This clearly appears from the testimony of Susannah Alrichs, who knew her from the earliest period after the death of her husband, Peter Stidham;  and her testimony is corroborated by Sarah Selby and Isaac Stidham.  But from the year 1785 to 1789, and thence to the death of William Stidham she was in the continual receipt of large sums of money which were payable to her from the former estate of Albertus Vansant, her former husband.  Then there seemed to have been an acknowledgment by William Stidham in 1803, or between that period and 1806, that large sums of money were due to Sarah Stidham, by his indorsements of the judgments against John Betson, for the use of Sarah Stidham.  It is true this money might as well have been due to Sarah Stidham on account of money which William, as her attorney, received from Vansant's estate, as for this annuity;  but there is nothing to distinguish it from one or

---

[1] At this point, *Ridgely's Notebook III,* *98,* the account of this case is interrupted;  it is resumed at *218, 249.*

the other. It shows that all money matters between these parties had not been settled. Beside, the account kept by Issac, the son of William, against Sarah Stidham, from August 3, 1805, to December, 1815, proves that these charges were designed as discounts against claims of Sarah Stidham, or for the purpose of exacting payments of them. Now, under these circumstances, I am not disposed to say that there shall be no further inquiry into the transactions between these parties. The presumption of payment from length of time is considerably weakened by these circumstances, and although they are not conclusive, yet they sufficiently repel it to prevent the length of time from interposing a bar. The Statute of Limitations is not pleadable in bar to a legacy nor annuity. 2 Ves.Jr. 572. In *Pickering v. Stanford*, 2 Ves.Jr. 272, the Master of the Rolls decreed an account of a personal estate from the peculiar circumstances of the case, although he reasoned most strongly against the admission of stale demands. ([NOTE.] See the whole of that case 2 Ves.Jr. 272–275, 581; 3 Ves.Jr. 332, 492.)

As to Mary Betson's claim for the legacy there is no circumstance to repel the presumption of payment. On the other hand the receipt of Mr. Betson in 1777, to Lucas Stidham, and her receipt to William Stidham in 1778, and the satisfaction entered by him on the judgments against John Betson, the husband of the complainant, strongly support the presumption of payment. This bill was filed more than forty years after the death of the testator, seven years after the death of the executor, William Stidham, and after the administration of his personal estate.

The will of Sarah Stidham imports nothing in relation to the claim for the annuity. It may as well be said that she intended to give the money alleged to be due from William Stidham to her daughter Mrs. Betson, the complainant, as that she abandoned the claim by the manner of her mention of her son William.

Mr. Stockton's acknowledgment, as it has been called, was never intended as the acknowledgment of any debt due to any of the parties. It is the mere acknowledgment of a very loose conversation, the amount or intention of which never went to the admission of any claim. It rather seemed to resist the claim. In *Jones v. Tuberville*, 2 Ves.Jr. 11, 14, the acknowledgment of Catharine Williams was considered as evidence against herself. She could not affect the other defendants. And here Mr. Stockton, the administrator of William Stidham, has administered his personal estate, and his acknowledgment could not be evidence against Rebecca Shields if it had been made with the intention to admit a debt.

An account was decreed on the bill filed by Mary Betson, executrix of Sarah Stidham, for the arrears of annuity.

The defendant Rebecca Shields appealed from this decree.

The bill filed by Mary Betson in her own right for the legacy was dismissed, and from this decree she appealed.

---

These appeals were argued at the June Term, 1821, of the High Court of Errors and Appeals, before: JOHNS, Chief Justice of the Supreme Court; WARNER, Justice of the Court of Common Pleas; DAVIS, Justice of the Supreme Court; COOPER, Justice of the Court of Common Pleas; and BATSON, Justice of the Supreme Court. The case was kept under consideration of the Court, until the adjourned session, October, 1821, when, on the [——] [2] October, 1821, CHIEF JUSTICE JOHNS delivered the opinion of the Court, after stating the case and the questions as follows:

The Court are of opinion that the interlocutory order to account will affect the rights of the parties, because the course of proceeding is such as to make it necessary for the defendants to specify the items of an account of payments, and to prove each payment of an annuity for upwards of forty years. We, therefore, are of opinion the decree to account be reversed. And we consider that the claim for the annuity is barred by length of time as to the whole claim except so much thereof as accrued or became due subsequent to March 30, 1798.

We consider the Statute of Limitations as not pleadable in bar of an annuity, but that time may bar such a claim. And we consider the general rule as to time to be twenty years, which rule we apply to so much of the claim as was due twenty years before the filing of the bill in this cause. The bill was filed on March 30, 1818. We take out all the time beyond twenty years, and consider that the residue of the claim is not barred by time. And as to so much of the annuity which became due since March 30, 1798, we are of opinion that the evidence of its being paid or satisfied, or what part of it, is not satisfactory. We have carefully examined all the depositions, and consider that there is too much uncertainty, which we believe might be removed by an examination of the witnesses *viva voce*. It is therefore our opinion that a feigned issue should be directed to be tried in one of the courts of common law to ascertain whether any part of the annuity which accrued after March 30, 1798, is due, and how much.

---

[2] Blank in manuscript.

This Court, therefore, do further order and decree that a feigned issue be carried to one of the courts of common law to ascertain whether any and what part of the annuity of £12 which by the will of Peter Stidham dated the [——] day of [——]³ 1777 to be paid by William Stidham to Sarah Stidham which accrued subsequent to March 30, 1798 is due and unsatisfied.

([NOTE.] The above opinion was copied from the notes of Chief Justice Johns furnished by him to the Chancellor.)

The Court affirmed the decree dismissing the bill filed by Mary Betson for the legacy bequeathed to her.

The following is the decree of the High Court of Errors and Appeals in this case of *Shields and Stockton v. Betson, Executrix of Sarah Stidham:*

> October 19, 1821. The Court being of opinion that so much of the amount of £12 *per annum* directed by the testator Peter Stidham, the elder, deceased, in his last will set forth in the bill of complainant in this cause, to be paid to said S. Stidham during her widowhood by the said William Stidham, and charged on the real estate devised to him, interest by the said last will which accrued before March 30, 1798, is barred by lapse of time. And that so much of the said annuity as accrued subsequent to March 30, 1798, is not barred by lapse of time. And this Court being also of opinion that whether any and what part of the said annuity which accrued after March 30 in the year aforesaid is now due and unsatisfied should be ascertained by a trial at law. It is therefore ordered by the Court that the interlocutory decree made in the court below be reversed, and it is farther ordered that an issue be directed by the court below to one of the courts of law for the County of New Castle to try by a jury whether any and what part of the annuity of £12 *per annum*, which by the will of Peter Stidham dated the [——] day of [——]⁴ 1777 was to be paid to Sarah Stidham, which accured subsequent to March 30, 1798, with the interest thereon is due and unsatisfied. And it is ordered that the record be remanded to the court below to carry this decree into execution, and that a final decree be made in the said court.

NOTE. The Court admits that there is no Statute of Limitation applicable to this case, then length of time can be no bar.

---

3 Blanks in manuscript.

4 Blanks in manuscript.

The question is whether there is any ground to presume a release or extinguishment in this case. But the Court said that time may bar such a claim as this, which is contrary to every other case of annuity, and to the principles of applying length of time in equity. The Statute of Limitation does not apply to an equitable demand, but equity adopts it, and takes the same limitation in cases that are analogous to those in which it applies at law, but in this case there is not any analogous case at law, in which the Statute of Limitation could operate as a bar. See *Stackhouse v. Barnston,* 10 Ves. 453. How then can time bar such a claim! See at law, *Eldridge v. Kent,* Cowp. 214. See *Astor v. Astor,* 1 Ves. 264. *Wynn v. Williams,* 5 Ves. 130.